# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| VINCENT R. JOHNSON and JULIE JOHNSON,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMERICAN LEATHER SPECIALTIES CORP. and SHOPKO STORES, INC.,<br><br>    Defendants,<br><br>and<br><br>AMERICAN LEATHER SPECIALTIES CORP. and SHOPKO STORES, INC.,<br><br>    Third-Party Plaintiffs,<br><br>vs.<br><br>ULTRA MARKETING CORPORATION,<br><br>    Third Party Defendant. | No. C06-3073-MWB<br><br><br><br>**MEMORANDUM OPINION AND ORDER REGARDING THIRD PARTY DEFENDANT'S MOTION TO DISMISS** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *A. Legal Standards For Rule 12(b)(2) And Personal Jurisdiction* . . . . . . . 6
   *B. Personal Jurisdiction Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . 10

       *1.    Ultra Marketing's contacts with Iowa* .................. 10
       *2.    Nature, quality and quantity of contacts* ............. 11
       *3.    The relation of the cause of action to contacts* .......... 13
       *4.    Interest of forum state in providing a forum* ............ 15
       *5.    The convenience of the parties* ..................... 16
       *6.    Conclusion* ................................... 16

**III. *CONCLUSION*** ............................................. 17

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On November 6, 2006, plaintiffs Vincent R. Johnson and Julie Johnson (collectively "the Johnsons" unless otherwise indicated) filed a complaint against defendants/third-party plaintiffs American Leather Specialties Corp. ("American Leather") and Shopko Stores, Inc. ("Shopko") alleging eight causes of action related to injuries sustained by plaintiff Vincent Johnson when a dog leash failed, causing the leash's cord to snap back, striking Vincent in the left eye.[1] It is alleged that Vincent purchased the dog

---

[1] The eight causes of action asserted are for: strict products liability against American Leather; breach of express warranty against both Shopko and American Leather; breach of implied warranty against American Leather; negligent design and manufacture against American Leather; negligent distribution against American Leather; negligence (continued…)

2

leash from defendant/third-party plaintiff Shopko and that defendant/third-party plaintiff American Leather designed and/or manufactured and distributed the leash under the trademark, "Canine Country." Compl. at ¶ 4. The Complaint alleges that this court has subject matter jurisdiction by virtue of diversity of citizenship of the parties, 28 U.S.C. § 1332.

On January 29, 2008, defendants/third-party plaintiffs Shopko and American Leather filed a third-party complaint against third-party defendant Ultra Marketing Corporation ("Ultra Marketing") for contribution. On January 31, 2008, defendants/third-party plaintiffs Shopko and American Leather filed an amended third-party complaint against third-party defendant Ultra Marketing for contribution. Third-party defendant Ultra Marketing subsequently filed a Motion to Dismiss (Doc. No. 24). In its motion, third-party defendant Ultra Marketing asserts that it does not have sufficient minimum contacts with the State of Iowa so as to satisfy the Due Process Clause of the United States Constitution. Defendants/third-party plaintiffs Shopko and American Leather have filed a timely resistance to third-party defendant Ultra Marketing's Motion to Dismiss.

### B. *Factual Background*

The following factual background is based on the allegations of defendants/third-party plaintiffs Shopko and American Leather's amended third-party complaint and the affidavits attached to the parties' briefs.[2]

---

[1](…continued)
against Shopko; and, loss of consortium against both Shopko and American Leather.

[2] Because third-party defendant Ultra Marketing has moved to dismiss the amended third-party complaint against it for lack of personal jurisdiction, the court must "view the
(continued…)

Ultra Marketing Corporation is a Minnesota Corporation and is authorized to do business in Minnesota. Ultra Marketing is a marketing representative for a number of Chinese companies who are distributors of goods manufactured by other Chinese companies. As a marketing representative for those Chinese companies, Ultra Marketing provides potential purchasers of goods from a Chinese distributor with information concerning the goods that may be purchased from that distributor. If the potential purchaser decides that it wishes to place an order with the Chinese distributor represented by Ultra Marketing, Ultra Marketing will facilitate placement of the purchase order with the Chinese distributor and will facilitate communication between the Chinese distributor and the purchaser with respect to any purchase order submitted to the Chinese distributor. Ultra Marketing does not have authority to bind those Chinese distributors with which it has a marketing relationship to a binding contract. All purchase and sale agreements are entered into directly by and between the purchaser and the Chinese distribution company.

Ultra marketing is a marketing representative for a Chinese distributor named Jiangsu Namkwong Industries of Nanjing, China. Jiangsu Namkwong Industries distributes, *inter alia*, pet supplies manufactured by Chinese manufacturers. Ultra Marketing has facilitated communications between Jiangsu Namkwong Industries and defendant/third-party plaintiff American Leather concerning American Leather's purchase of pet supplies from Jiangsu Namkwong Industries.

The dog leash at the center of this case was designed and manufactured by J.J. Hao,

---

²(…continued)
evidence in the light most favorable to [Shopko and American Leather] and resolve factual conflicts in [their] favor." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983-84 (8th Cir. 2004).

Jiangsu Namkwong Industries. Defendant/third-party plaintiff American Leather purchased the leash through Ultra Marketing. American Leather distributed the leash to defendant/third-party plaintiff Shopko, who, in turn, sold it to plaintiff Vincent Johnson. American Leather purposefully marketed its products, including the dog leash in this case, to mass merchants and retailers in many states, including Iowa. American Leather, by and through its marketing representatives, informed Ultra Marketing that it would be marketing its products in and throughout the United States.

Neither American Leather, Jiangsu Namkwong Industries or Ultra Marketing had any contact with the State of Iowa in connection with American Leather's purchase of the leash from Jiangsu Namkwong Industries. Ultra Marketing's only involvement in the transaction between American Leather and Jiangsu Namkwong Industries was limited to meetings with American Leather in New York and/or telephone, e-mail, or regular mail communications between Ultra Marketing, from its offices in Minnesota and American Leather at its offices in the State of New York, or Jiangsu Namkwong Industries at its place of business in Nanjing, China. All transactions involving American Leather in which Ultra Marketing has been involved have not included any activity by Ultra Marketing in Iowa. Ultra Marketing owns no property in Iowa, it has no employees in Iowa, it has no bank accounts in Iowa, and has no place of business in Iowa. Ultra Marketing is not registered to do business in Iowa.

Ultra Marketing's only contact with the State of Iowa has been in connection with an Iowa corporation, Apache Hose and Belting Company ("Apache Hose") of Cedar Rapids, Iowa. Since 2004, Ultra Marketing has provided marketing representative services to a Chinese company, Shanghai Cartec Industrial and Trading Company ("SCITC"). In its capacity as a marketing representative for SCITC, Ultra Marketing has met three times with Apache Hose at its offices in Cedar Rapids, Iowa, in connection with Apache Hose's

purchase of goods in China from SCITC. In addition to the three meetings, Ultra Marketing has communicated with Apache Hose from Ultra Marketing's offices in Minnesota by telephone, fax, e-mail, and regular mail. Aside from its contacts with Apache Hose, Ultra Marketing conducts no activities within the State of Iowa.

## II. LEGAL ANALYSIS
### A. *Legal Standards For Rule 12(b)(2) And Personal Jurisdiction*

Defendants/third-party plaintiffs Shopko and American Leather's amended third-party complaint "must state sufficient facts . . . to support a reasonable inference that [Ultra Marketing] may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). "'Once jurisdiction ha[s] been controverted or denied, [the plaintiff] ha[s] the burden of proving such facts.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)). Shopko and American Leather need not, however, establish jurisdiction by a preponderance of the evidence until an evidentiary hearing is held, or until trial. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). For Shopko and American Leather to survive Ultra Marketing's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, Shopko and American Leather "'need only make a prima facie showing of jurisdiction,' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004) (quoting *Epps v. Stewart Information. Serv. Corp*, 327 F.3d 642, 647 (8th Cir. 2003)). When examining Shopko and American Leather's prima facie showing, the court "must view the evidence in the light most favorable to [Shopko and American Leather] and resolve factual conflicts in [their] favor." *Id.* at 983-84.

6

This court "may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994). Iowa's long-arm statute[3] "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Fl. Asset Financing Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (discussing Iowa Rule of Civil Procedure 1.306). "As a result, the Court is left with the sole issue of whether exercising personal jurisdiction over [the] nonresident Defendant is consistent with principles of due process." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 499-500 (S.D. Iowa 2007); *see Bell Paper Box, Inc. v. U.S. Kids, Inc.* (*Bell Paper I*), 22 F.3d 816, 818 (8th Cir. 1994) ("[W]hen a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause . . . the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.").

"The Due Process Clause requires 'minimum contacts' between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant." *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *World-Wide*

---

[3] Iowa's long-arm statute is actually set forth in two places: Iowa Code § 617.3 and Iowa Rule of Civil Procedure 1.306. Section 617.3 provides for the service of "foreign corporations or nonresidents contracting or committing torts in Iowa," Iowa Code § 617.3 (2006), and Rule 1.306 provides for an "[a]lternative method of service" that applies to "every corporation, individual, personal representative, partnership or association," Iowa R. Civ. P. 1.306. Rule 1.306 is the provision that specifically extends Iowa's jurisdictional reach to the federal constitutional limits. *See Hammond*, 695 N.W.2d at 5; *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980) (noting that Iowa Rule of Civil Procedure 56.2 (now Rule 1.306), "unlike Iowa's older 'long-arm' statute, section 617.3, . . . expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution").

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Eighth Circuit Court of Appeals has explained sufficient minimum contacts as follows:

> "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice." By defendant's reasonable anticipation, we mean "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." We have set "a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Factors one through three are primary. With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'"

*Id.* (citations omitted); *see Steinbuch*, 518 F.3d at 585-86; *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006); *Epps v. Stewart Information. Servis. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003); *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 613 (8th Cir. 1998); *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The Eighth Circuit Court of Appeals has further instructed that:

> The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of

> random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State.

*Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693-94 (8th Cir. 2003) (citations omitted).

"'Minimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.'" *Johnson*, 444 F.3d at 955-56 (quoting *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)). If the court determines that a defendant has the requisite "minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see Luv N. Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) ("It remains for us to inquire whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (citation and quotation omitted)). These other factors include:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies," and the "shared interest of the several States in furthering fundamental substantial social policies."

*Burger King Corp.*, 471 U.S. at 476-77 (quoting *World Wide Volkswagen*, 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of

9

jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477. If, however, a defendant "seeks to defeat jurisdiction" when the defendant purposefully "directed his activities at forum residents"—i.e., when minimum contacts are clearly established—the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

### B. Personal Jurisdiction Analysis

Shopko and American Leather do not specify whether the court has specific jurisdiction, general jurisdiction, or both over Ultra Marketing. As a result, the court will analyze all five factors in its minimum contact analysis. *See Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 712 (8th Cir. 2003) (noting that the "source and connection" factor is not relevant in a general jurisdiction analysis, and that the "quantity of the contacts" factor is not especially relevant in a specific jurisdiction analysis).

#### 1. *Ultra Marketing's contacts with Iowa*

Looking at Ultra Marketing's contacts with Iowa, the court notes that it is a Minnesota corporation with its principal place of business in Minnesota. Ultra Marketing does not have any office, agent, representative or employee in Iowa. Further, Ultra Marketing does not have any bank accounts or property in Iowa. Ultra Marketing's only contact with the State of Iowa has been in connection with an Iowa Company, Apache Hose of Cedar Rapids, Iowa. Since 2004, Ultra Marketing has met three times with Apache Hose at its offices in Cedar Rapids, Iowa, in connection with Apache Hose's purchase of goods in China from SCITC, a Chinese company to whom Ultra Marketing has provided marketing representative services. In addition to the three meetings at Apache Hose, Ultra Marketing has communicated with Apache Hose from Ultra Marketing's offices in Minnesota by telephone, fax, e-mail, and regular mail. Aside from

its contacts with Apache Hose, Ultra Marketing conducts no activities with the State of Iowa.

### 2. *Nature, quality and quantity of contacts*

These facts all suggest that the nature and quality of Ultra Marketing's contacts with the State of Iowa, at least regarding Ultra Marketing's "physical" contacts with the forum state, are limited. Indeed, but for its contacts with Apache Hose, Ultra Marketing's contacts with Iowa would be nonexistent. Moreover, the quantity of these contacts, three visits to Iowa since 2004, is again limited to Ultra Marketing's dealings with Apache Hose. The fact that the quality, nature and quantity of Ultra Marketing's contacts with Iowa are coextensive to those limited contacts it had with Apache Hose lead the court to conclude that the quality, nature and quantity of Ultra Marketing's contacts are insufficient to justify exercise of personal jurisdiction under the Due Process Clause. The court notes that other than the three in-person meetings Ultra Marketing had with Apache Hose in Iowa, all contacts between Ultra Marketing and Apache Hose were by telephone, fax, e-mail, and regular mail. The significance of this fact is that the Eighth Circuit Court of Appeals has held that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) (find that the first two factors of analysis were not met "notwithstanding the numerous phone calls and letters that were exchanged between the parties."); *see T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Assoc.*, 749 F.2d 523, 525 (8th Cir. 1984) (holding that where the contact between defendant and the forum state were limited to telephone calls and wire or mail transfers of money that such contact "standing alone, was insufficient to satisfy the requirements of due process.").

The court also concludes that Ultra Marketing's three visits to Iowa over a four year period of time do not establish that Ultra Marketing has continuous and systematic contacts

with Iowa which is required to find general jurisdiction. In *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 411-12, 416 (1984), the United States Supreme Court held that the defendant foreign corporation's general business contacts with Texas did not meet the minimum contacts standard where the defendant foreign corporation had purchased equipment from a company in the forum state, sent personnel to the forum state for training, and sent an officer of the corporation on a single trip to the forum for contract negotiations, but had never performed operations or solicited business within the state or sold any product in the forum state. *Id.* at 411-12, 416. The Court held that "mere purchases", even when occurring at regular intervals, along with the related brief visits to the forum state by employees, did not constitute "continuous and systematic general business contacts." *Id.* at 416-18. Since the Court's decision in *Helicopteros* was handed down, the Eighth Circuit Court of Appeals has held that visits to the forum state are insufficient to support personal jurisdiction if they are too few in number and too slight in quantity. *See Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (finding that defendant's two day trip to forum state to examine plaintiff's facilities and subsequent telephone and mail communications to be insufficient contact); *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1279 (8th Cir. 1991) (holding that defendant's employees' three trips to forum state constituted insufficient contact); *see also Glater v. Eli Lilly & Co.*, 744 F.2d 213, 215, 217 (1st Cir. 1984) (holding that defendant corporation's general business contacts were too fragmentary to satisfy the constitutional standard for general jurisdiction where it advertised its pharmaceutical product in trade journals reaching the forum state and employed eight sales representatives to service physicians, pharmacies, and hospitals within the state).

Thus, the court concludes that consideration of the first three factors in the analysis weighs against exercising personal jurisdiction of any type over Ultra Marketing.

### 3. *The relation of the cause of action to contacts*

Ultra Marketing argues that its contacts with the State of Iowa are unrelated to the Johnsons' current tort claims in this case. Ultra Marketing's contacts to Iowa are limited to its interactions with Apache Hose as a marketing representative to SCITC. Apache Hose and SCITC had no involvement with the manufacture or the distribution of the allegedly defective dog leash at the center of this case. Thus, it would appear that Ultra Marketing is correct in its assertion that its contacts with Iowa are unrelated to the Johnsons' current tort claims. Shopko and American Leather, however, counter that Ultra Marketing's contacts with Iowa are related to the Johnsons' claims under the stream-of-commerce theory, and directs the court's attention to the Eighth Circuit Court of Appeals's decision in *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir. 1994).

The "mere placement of a product into the stream of commerce, without more, is insufficient to constitute purposeful availment." *Steinbuch*, 518 F.3d at 587; *see Dever*, 380 F.3d at 1075 (holding that mere presence of manufacturer's products in forum state was insufficient to support a finding of general personal jurisdiction under stream-of-commerce theory where manufacturer was not registered to do business in forum state, and had no offices, inventory, real estate, employees, bank accounts, personal property, or agents in the state); *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614-15 (8th Cir. 1998) (finding that a Jamaican brewer, whose beer was distributed in Minnesota, did not have sufficient minimum contacts with Minnesota for the exercise of personal jurisdiction where there was no evidence that brewer was licensed to do business in Minnesota, maintained a bank account, phone number, or mailing address in Minnesota, or maintained any employees or agents for service of process in Minnesota, and brewer exercised no control over beer, importer, or distributors once beer left

Jamaica)); *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990) ("[P]lacement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State."). The Eighth Circuit Court of Appeals, however, has recognized that "[p]ersonal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state." *Stanton*, 340 F.3d at 694 (citations omitted); *accord Steinbuch*, 518 F.3d at 587-88 (noting that "we have recognized a state's exercise of jurisdiction over a seller who delivered its products to a regional distributor with an expectation that the distributor would penetrate the forum state."); *Barone*, 25 F.3d at 615 (concluding that when a foreign manufacturer "pour[s] its products" into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, the manufacturer has "purposefully reaped the benefits" of the laws of each State in that trade area for due process purposes.). The stream of commerce theory is inapplicable here because Ultra Marketing is neither the manufacturer, seller or distributor of the dog leash at issue in this litigation. Rather, as a marketing representative for Chinese distributors, Ultra Marketing provides potential purchasers of goods from a Chinese distributor with information concerning the goods that may be purchased from that distributor. Although Ultra Marketing facilitates communications between the Chinese distributor and the purchaser, Ultra Marketing does not have authority to contractually bind the Chinese distributors. Instead, all purchase and sale agreements are entered directly by and between the purchaser and the Chinese distributor. Stream-of-commerce personal jurisdiction theory is based on the rationale that "it is only reasonable for companies that distribute allegedly defective products through regional distributors in this country to anticipate being haled into court by plaintiffs in their home states." *Barone*, 25 F.3d at 615. There is no

evidence in this case that Ultra Marketing used a distribution system to distribute or sell dog leashes. Moreover, there is no evidence in the record that Ultra Marketing had any control whatsoever over where the dog leashes went after American Leather imported them from China. Therefore, the court finds that the steam-of-commerce theory is inapplicable here with respect to Ultra Marketing's activities and that Ultra Marketing's contacts with Iowa are unrelated to the Johnsons' current claims. Accordingly, the court concludes that consideration of this factor in the analysis also weighs against exercising personal jurisdiction of any type over Ultra Marketing.

### 4. *Interest of forum state in providing a forum*

The next factor that the court must consider is the interest of the forum state in providing a forum for its residents. *See Johnson*, 444 F.3d at 956; *Romak USA, Inc.*, 384 F.3d at 984; *Dever*, 380 F.3d at 1073-74; *Lakin*, 348 F.3d at 711-12 & n. 11; *Stanton*, 340 F.3d at 694; *Pecoraro*, 340 F.3d at 562; *Epps*, 327 F.3d at 648; *Porter*, 293 F.3d at 1076. There can be little doubt that Iowa has an interest in adjudicating the Johnsons' claims and providing a forum for its residents. *See Burger King Corp.*, 471 U.S. at 473-74 (noting that "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."); *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir.1997) (concluding that forum state had an interest in providing a forum for its residents). Accordingly, this factor weighs in favor of the exercise of specific personal jurisdiction over Ultra Marketing. This factor alone, however, is insufficient to support the finding that there is personal jurisdiction over Ultra Marekting. See *Johnson*, 444 F.3d at 956 ("The last two factors carry less weight and are not dispositive."); *see also Steinbuch*, 518 F.3d at 585-86 (noting that the first three factors are to be afforded "primary importance"); *Coen*, 509 F.3d at 905 (noting that the first three factors are "primary" in the analysis); *Minnesota Mining and Mfg., Co. v.*

*Nippon Carbide Indus., Co*, 63 F.3d 694, 697 (8th Cir. 1995) (explaining that the last two factors are "secondary factors"); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991) (holding the first three factors are to be accorded more weight than the fourth and fifth factors).

### 5. *The convenience of the parties*

The final factor that the court must consider is the convenience of the parties if this matter were litigated in Iowa. *See Johnson*, 444 F.3d at 956; *Romak USA, Inc.*, 384 F.3d at 984; *Dever*, 380 F.3d at 1073-74; *Lakin*, 348 F.3d at 711-12 & n. 11; *Stanton*, 340 F.3d at 694; *Pecoraro*, 340 F.3d at 562; *Epps*, 327 F.3d at 648; *Porter*, 293 F.3d at 1076. The court notes that "[a] plaintiff normally is entitled to select the forum in which it will litigate". *Northrup King Co. v. Compania Productora Semillas Algodoneras*, 51 F.3d 1383, 1389 (8th Cir. 1995). The court notes that neither party has provided the court with any evidence regarding the location of witnesses or evidence in this matter. However, since the accident occurred in Iowa, it is likely that some of the witnesses and some of the evidence are located here. Moreover, Ultra Marketing is based in Minnesota, has visited Iowa previously and makes no claim regarding difficulty or hardship in traveling here. In addition, the named plaintiffs reside in Iowa. The court concludes that, overall, this factor weighs in favor of the court's exercise of personal jurisdiction.

### 6. *Conclusion*

Upon consideration of the five relevant factors, the court concludes that the exercise of general or specific personal jurisdiction over Ultra Marketing is inappropriate under the Iowa long-arm statute and fails to comport with due process. Ultra Marketing lacks sufficient minimum contacts with Iowa such that the exercise of personal jurisdiction here would offend traditional notions of fair play and substantial justice.

### *III. CONCLUSION*

For the reasons discussed above, Ultra Marketing's Motion to Dismiss is **granted**.

**IT IS SO ORDERED.**

**DATED** this 16th day of July, 2008.

                                        MARK W. BENNETT
                                        U. S. DISTRICT COURT JUDGE
                                        NORTHERN DISTRICT OF IOWA